## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FIRST PRESTON MANAGEMENT, INC., | : |
| | : |
| Plaintiff, | : |
| | : Case No. _____ |
| v. | : |
| | : |
| NATIONAL HOME MANAGEMENT SOLUTIONS OF GEORGIA, LLC, a/k/a/ NATIONAL HOME MANAGEMENT SOLUTIONS, INC., HOME MANAGEMENT SOLUTIONS, INC., PRESCIENT, INC., MICHAEL HARDIMAN, PATRICIA BORNSCHEUER, SHELLY CARTER-SMITH, and NANCY KAY, | : |
| | : |
| Defendants. | : |

### COMPLAINT

Plaintiff, First Preston Management, Inc., ("First Preston"), by its attorneys, complains against defendants National Home Management Solutions of Georgia, LLC a/k/a National Home Management Solutions, Inc. ("NHMS"), Home Management Solutions, Inc. ("HMS"), Prescient Inc. ("Prescient"), Michael Hardiman ("Hardiman"), Patricia Bornscheuer ("Bornscheuer"), Shelly Carter-Smith ("Carter-Smith"), and Nancy Kay ("Kay"), and alleges as follows:

### INTRODUCTION

1. This is a case about the theft of key competitive documents and information from First Preston by the defendants, for their use in winning multi-million dollar real estate management and marketing ("M&M") contracts for defendant NHMS with the U.S. Department of Housing and Urban Development ("HUD"). Specifically, the defendants schemed to misappropriate a copy of First Preston's closely guarded and extremely valuable proposal for the

HUD contracts as well as a variety of other valuable First Preston documents and information. Further, while they were still employees of First Preston and a First Preston affiliate, defendants Bornscheuer and Carter-Smith took advantage of their positions to recruit employees away from First Preston and its affiliate, for defendant NHMS. Using the documents and information misappropriated from First Preston, the defendants collaborated to compete for M&M contracts with the same federal agency to which First Preston and its business partners submit bid proposals. Based on these improper activities, First Preston seeks compensatory and punitive damages for the defendants' unfair competition; theft and misappropriation of trade secrets and confidential and proprietary information; breach of employment contracts; violation of the duties of good faith, loyalty, and fidelity; and civil conspiracy.

2. This case also seeks a declaratory judgment that First Preston did not engage in tortious interference with NHMS's contractual and business relations with a federal contractor. Apparently as part of an effort to intimidate First Preston and its business partners from protecting their rights, NHMS has threatened First Preston with a spurious claim that First Preston tortiously interfered with a subcontract that NHMS hoped to enter into with AFR & Associates ("AFR"), the M&M prime contractor in Georgia. First Preston did no such thing, instead simply responding to AFR's request for subcontracting assistance when AFR's attempts to negotiate a subcontract with NHMS hit a stone wall.

## THE PARTIES

3. Plaintiff First Preston is a Texas corporation with its principal place of business in Addison, Texas.

4. Defendant NHMS is a Florida Limited Liability Company with its principal place of business in Miami, Florida.

5. Defendant HMS is a Georgia corporation with its principal place of business in Atlanta, Georgia.

6. Defendant Prescient is a Florida corporation with its principal place of business in Miami, Florida.

7. Defendant Hardiman is an individual who resides in Buford, Georgia.

8. Defendant Bornscheuer is an individual who resides in Pennsylvania

9. Defendant Carter-Smith is an individual who resides in Georgia.

10. Defendant Kay is an individual who resides in Pennsylvania.

## JURISDICTION AND VENUE

11. The Court has jurisdiction over this matter because the plaintiff and defendants are residents of different states and the amount in controversy exceeds, exclusive of interests and costs, the sum specified by 28 U.S.C. § 1332.

12. Venue in this District is proper because a substantial part of the events that are the subject matter of this litigation occurred in this District. Among other things, the defendants submitted proposals to the HUD in this District using misappropriated confidential and proprietary information from First Preston, leading to the award of M&M contracts by HUD in this District based on the illicit information. In addition, HUD and the U.S. Small Business Administration ("SBA") played key roles in the unsuccessful subcontract negotiations between NHMS and AFR that underlie the tortious interference issue, and HUD and SBA personnel thus may serve as important witnesses in this case.

13. Defendant NHMS is subject to the Court's jurisdiction because it committed a tort in the District of Columbia and is doing business in the District of Columbia. D.C. Code Ann. § 13-423(a)(1) (2005).

14. Defendant HMS is subject to the Court's jurisdiction because it committed a tort in the District of Columbia and is doing business in the District of Columbia. D.C. Code Ann. § 13-423(a)(1) (2005).

15. Defendant Prescient is subject to the Court's jurisdiction because it committed a tort in the District of Columbia and is doing business in the District of Columbia. D.C. Code Ann. § 13-423(a)(1) (2005).

16. Defendant Hardiman is subject to the Court's jurisdiction because he committed a tort in the District of Columbia and is doing business in the District of Columbia. D.C. Code Ann. § 13-423(a)(1) (2005).

17. Defendant Bornscheuer is subject to the Court's jurisdiction because she committed a tort in the District of Columbia and is doing business in the District of Columbia. D.C. Code Ann. § 13-423(a)(1) (2005).

18. Defendant Carter-Smith is subject to the Court's jurisdiction because she committed a tort in the District of Columbia and is doing business in the District of Columbia. D.C. Code Ann. § 13-423(a)(1) (2005).

19. Defendant Kay is subject to the Court's jurisdiction because she committed a tort in the District of Columbia, is doing business in the District of Columbia, and is a former resident of the District of Columbia. D.C. Code Ann. § 13-423(a)(1) (2005).

## BACKGROUND

### First Preston's Business

20. First Preston is a full service real estate company. First Preston specializes in portfolio management, marketing and sales of real estate properties for institutional investors, mortgage banking firms, government agencies, and other clients. Since its inception in 1988,

First Preston has successfully managed an inventory of over 250,000 real estate assets with a total portfolio value of over $13 billion.

21.  Among other things, First Preston competes for government contracts issued by HUD. In 1998, HUD issued a Request for Proposals ("RFP") for its M&M contracts under its Real Estate Owned program. The M&M contracts involve the physical maintenance (that is, the "Management" portion of the contract) and the resale (*i.e.*, the "Marketing") of homes turned over to HUD as a result of foreclosure proceedings.

22.  In 1998, First Preston prepared and submitted to HUD a proposal for the M&M Contracts (the "1998 Proposal"). The 1998 Proposal is a voluminous document containing detailed plans for how First Preston would accomplish the tasks in the M&M contracts, ensure compliance with the applicable standards, and achieve HUD's goals. First Preston invested extensive time, labor, skill and money in preparing the 1998 Proposal.

23.  Based on the 1998 Proposal, HUD awarded First Preston M&M contracts for a large portion of the United States. Specifically, First Preston became the M&M contractor in the following regions:  D1 (Texas, New Mexico, Colorado, Utah, Wyoming, South Dakota); D2 (Minnesota, Wisconsin, Nebraska, North Dakota, Montana, Iowa); D3 (Arkansas, Louisiana, Oklahoma, Missouri, Kansas); C4 (Arizona and Southern Nevada); and P3 (New York, New Jersey, Delaware, Virginia, District of Columbia). In addition, Southeast Alliance of Foreclosure Specialists ("SAFS"), a joint venture owned 49% by First Preston, was awarded the M&M contract for the A3 region (Florida, Puerto Rico, Virgin Islands).

### First Preston's Efforts to Protect the 1998 Proposal

24. Recognizing the value of the resources poured into crafting its 1998 Proposal and the proprietary nature of the information found throughout the document, First Preston has taken significant steps to protect against its unauthorized use.

25. First Preston strictly limits access to the 1998 Proposal. The 1998 Proposal is not distributed to the public. Even within the company, the 1998 Proposal is accessible only by a small subset of First Preston employees. Paper copies of the 1998 Proposal are secured in a locked room in First Preston's corporate office. The electronic version of the 1998 Proposal is secured on computers to which only a small group of key employees have access. Prior to allowing any employee access to the 1998 Proposal, the importance of protecting the proposal's confidentiality is stressed. First Preston requires any copies of the 1998 Proposal used at a meeting to be returned at the conclusion of the meeting.

### First Preston's Relationship With Bornscheuer, Carter-Smith, and Kay

26. Bornscheuer joined First Preston in September 1999 and left the company in June 2004. Bornscheuer's responsibilities at First Preston included managing the office overseeing the performance of First Preston's M&M contracts in the Northeast and Mid-Atlantic regions. Bornscheuer signed a Contract of Employment that includes a "Confidentiality and Non-Disclosure" clause in which she acknowledged that she would acquire confidential and proprietary information from First Preston (specifically including bidding information and information about fellow employees) and agreed that she would not disclose that information outside of the company.

27. Carter-Smith joined SAFS, the First Preston joint venture, in March 1999 and left the company in August 2004. Carter-Smith's responsibilities at SAFS included serving as the

Contract Manager for the M&M contract for Florida, Puerto Rico, and the U.S. Virgin Islands. Carter-Smith signed a Contract of Employment that includes a "Confidentiality and Non-Disclosure" clause in which she acknowledged that she would acquire confidential and proprietary information from SAFS (specifically including bidding information and information about fellow employees) and agreed that she would not disclose that information outside of the company.

28. Kay joined First Preston in September 1999 and left the company in August 2003. Kay's responsibilities at First Preston included serving as the Contract Manager for First Preston's M&M contracts in the Northeast and Mid-Atlantic regions and assisting in the preparation of First Preston's and its business partners' bids for a new round of M&M contracts. Kay signed a Contract of Employment that includes a "Confidentiality and Non-Disclosure" clause in which she acknowledged that she would acquire confidential and proprietary information from First Preston (specifically including bidding information and information about fellow employees) and agreed that she would not disclose that information outside of the company.

### NHMS, HMS, Prescient and Hardiman

29. Hardiman is a former employee of SAFS. In June 2003, Hardiman left SAFS and shortly thereafter formed HMS. Hardiman is the principal owner and operator of HMS and controls and directs the day-to-day operations of the business.

30. HMS partnered with Prescient to form NHMS. NHMS was formed in order to compete for HUD M&M prime contracts and subcontracts. Specifically, in September 2003, NHMS submitted proposals in response to an RFP issued by HUD for a new round of M&M contracts. In fall 2004, HUD awarded NHMS the M&M prime contracts for New York, New

Jersey, and Florida. NMHS also competes for subcontracts with other companies awarded HUD M&M prime contracts. Thus, NHMS competes directly with First Preston and its business partners for HUD M&M contracts and subcontracts.

31. NHMS engaged Kay, apparently as an independent contractor, to assist in the preparation of NHMS's bids for the M&M contracts. NHMS hired Bornscheuer and Carter-Smith as employees to assist in the performance of its M&M contracts.

### Defendants' Scheme to Misappropriate First Preston's Confidential and Proprietary Documents and Information

32. In or around September 2004, AFR discovered First Preston's 1998 Proposal on its computer system. Realizing the impropriety of having a copy of First Preston's proposal on its computers, AFR notified First Preston immediately. AFR explained that it had never obtained a copy of the 1998 Proposal. An NHMS team, however, under the supervision of Hardiman, had assisted in the preparation of AFR's proposal for the Georgia M&M contract. As part of that effort, AFR had given Hardiman's NHMS team access to AFR's computers.

33. On information and belief, the copy of First Preston's 1998 Proposal that AFR discovered on its computer system was stolen from First Preston by Hardiman, Kay, or one of their NHMS colleagues. The paper copy of the 1998 Proposal then was scanned into an electronic format and loaded onto AFR's computer system. On information and belief, Hardiman, Kay, and their NHMS colleagues used First Preston's 1998 Proposal to help them prepare NHMS's proposals for the new M&M contracts.

34. Before leaving First Preston's employ, Bornscheuer required her subordinates to provide her with descriptions of First Preston's procedures and policies for performing the M&M contracts, supposedly because First Preston's headquarters had requested that information. In fact, First Preston's headquarters already had that information and was not the cause of

Bornscheuer's request. On information and belief, Bornscheuer requested this information in order to help NHMS, HMS, Prescient, and Hardiman prepare NHMS's proposals for the new M&M contracts and to perform any contracts that NHMS won. Moreover, in anticipation of leaving First Preston's employ, Bornscheuer took a large number of boxes of documents from First Preston's office. Again, on information and belief, Bornscheuer took those First Preston documents in order to help NHMS, HMS, Prescient, and Hardiman prepare NHMS's proposals for the new M&M contracts and to perform any contracts that NHMS won.

35. In addition to the theft of the First Preston's documents and information, Bornscheuer and Carter-Smith, while they were still employees of First Preston and SAFS, recruited their fellow employees to join NHMS and collected those employees' resumes and other employment information for NHMS. First Preston and its affiliate expended time, labor, and costs to recruit, train and retain those employees.

36. Thus, on information and belief, the NHMS team capitalized on First Preston's 1998 Proposal and other documents and information misappropriated from First Preston to create a financial and temporal shortcut for competing for, winning, and performing NHMS's M&M contracts.

### AFR's Failed Attempt to Subcontract with NHMS and its Subsequent Subcontract with First Preston

37. On March 18, 2004, after AFR had already submitted its proposal for the Georgia M&M contract, AFR and NHMS entered into a Teaming Agreement. Under the Teaming Agreement, AFR agreed to enter into negotiations with NHMS for a subcontract if HUD awarded AFR the M&M contract for Georgia.

38. On June 9, 2004, HUD notified AFR that it was awarded the M&M contract for Georgia. AFR then attempted to negotiate a subcontract with NHMS. NHMS, however, insisted

on terms in the proposed subcontract that not only were commercially unreasonable, but also were expressly and formally rejected by HUD as inconsistent with AFR's role as the prime contractor. For example, NHMS demanded 49 percent of AFR's revenues under the M&M contract while performing only 32 percent of the work. As a result of NHMS's refusal to budge, HUD demanded that AFR propose an alternative subcontracting plan or face termination of its contract. At that point, AFR contacted First Preston and obtained First Preston's agreement to serve as a subcontractor in lieu of NHMS.

39. AFR did not engage in discussions for subcontracting services with First Preston during the negotiations with NHMS. First Preston never initiated any discussions with AFR for subcontractor services for the Georgia M&M contract or engage in any such discussions during AFR's negotiations with NHMS. In fact, AFR approached First Preston for the subcontracting services, and did so only after exhausting its efforts to achieve an agreement with NHMS.

## COUNT I
## UNFAIR COMPETITION
### (Against All Defendants)

40. First Preston repeats and realleges herein the allegations stated in paragraphs 1 through 39 above.

41. As employees of First Preston and its affiliate, SAFS, Hardiman, Bornscheuer, Carter-Smith, and Kay were privy to First Preston's confidential and proprietary materials and information, such as the 1998 Proposal, policies and procedures for contract performance, and employee records. Those materials and information were the product of First Preston's extensive investment of time, labor, skill and money.

42. First Preston has taken reasonable steps to protect the products of its efforts, including through the use of confidentiality and non-disclosure agreements and establishing procedures and barriers to limit access to such materials within and outside First Preston.

43. Defendants have misappropriated the product of First Preston's efforts by improper means. Without authorization, Hardiman, Kay, NHMS, HMS, and Prescient obtained a copy of First Preston's 1998 Proposal and used it to prepare NHMS's proposals for M&M contracts. Without authorization, Bornscheuer and Carter-Smith, while still employed by First Preston and SAFS, used their access to information about their co-workers and to the co-workers themselves, which they gained by virtue of a confidential relationship, to recruit employees to join defendants Hardiman, NHMS, HMS, and Prescient in a commercial enterprise in competition with First Preston. Without authorization, Bornscheuer gathered and misappropriated information about First Preston's policies and procedures for contract performance, as well as a large collection of First Preston's business records, and used those documents and information to assist Hardiman, NHMS, HMS, and Prescient in a commercial enterprise in competition with First Preston.

44. As the proximate and direct result of defendants' unfair competition, First Preston has been injured in its business and has suffered damages.

45. First Preston is entitled to an award of damages, including punitive damages; an award of attorney's fees and costs; and other legal and equitable relief.

### COUNT II
### MISAPPROPRIATION OF TRADE SECRETS
### (Against All Defendants)

46. First Preston repeats and realleges herein the allegations contained in paragraphs 1 though 45 above.

47. The conduct described herein, including the theft of First Preston's 1998 Proposal and other documents and information, and the misuse of employment records and information concerning First Preston's and its affiliate's employees, constitutes the misappropriation of First Preston's trade secrets and confidential and proprietary information.

48. Such trade secrets and confidential and proprietary information are valuable assets of First Preston and derive independent economic value, actual and potential, from not being generally known to and not being readily ascertainable by other persons who could obtain economic value from such information. This confidential and proprietary business information provides First Preston with a competitive advantage or the opportunity to obtain a competitive advantage. In addition, such trade secrets and proprietary information were derived from extensive time, labor, skill and money.

49. First Preston has taken reasonable steps to protect its trade secrets, confidential information and other proprietary information, including through the use of confidentiality and non-disclosure agreements and establishing procedures and barriers to limit access to such materials within and outside First Preston.

50. Defendants have obtained and will obtain economic value from the disclosure and use of First Preston's trade secrets, confidential information and other proprietary information, including awards of HUD M&M contracts and subcontracts.

51. As the proximate and direct result of defendants' misappropriation of First Preston's trade secrets, confidential information and other proprietary information, First Preston has been injured in its business and has suffered damages.

52. First Preston is entitled to an award of damages, including punitive damages; an award of attorney's fees and costs; and other legal and equitable relief.

## COUNT III
## BREACH OF EMPLOYMENT AGREEMENTS
### (Against Defendants Bornscheuer, Kay, and Smith )

53.  First Preston repeats and realleges herein the allegations contained in paragraphs 1 though 52 above.

54.  Bornscheuer, Carter-Smith, and Kay are bound by the terms and conditions of their Contracts of Employment, which include confidentiality and non-disclosure provisions.

55.  The Contracts of Employment are valid and enforceable contracts. First Preston and its affiliate SAFS have performed and fulfilled, in all respects, their obligations under all three Contracts of Employment.

56.  Bornscheuer, Carter-Smith, and Kay received valuable consideration in exchange for executing the Contracts of Employment.

57.  The Contracts of Employment prohibit the removal or use of confidential or proprietary material.

58.  On information and belief, Bornscheuer and Carter-Smith breached their contractual non-disclosure and confidentiality obligations by using their access to information and documents concerning their co-workers to recruit those co-workers for Hardiman, NHMS, HMS, and/or Prescient. On information and belief, Bornscheuer also breached her contractual non-disclosure and confidentiality obligations by gathering information about First Preston's policies and procedures for contract performance and by misappropriating a large collection of First Preston's business records, in support of the efforts of Hardiman, NHMS, HMS, and/or Prescient to compete for and perform HUD M&M contracts. On information and belief, Kay breached her contractual non-disclosure and confidentiality obligations by using documents and information

obtained from First Preston to assist Hardiman, NHMS, HMS, and/or Prescient in the preparation of proposals for HUD M&M contracts.

59. As the proximate and direct result of Bornscheuer's, Kay's, and Carter-Smith's breaches of their Contracts of Employment, First Preston has been injured in its business and has suffered damages.

60. First Preston is entitled to an award of damages sustained by First Preston as a result of such breach, an award of attorney's fees and costs, and other legal and equitable relief.

## COUNT IV
## BREACH OF DUTIES OF LOYALTY, FIDELITY AND RESPONSIBILITY
### (Against Defendants Bornscheuer, Carter-Smith, and Kay)

61. First Preston repeats and realleges herein the allegations contained in paragraphs 1 though 60 above.

62. Bornscheuer, Carter-Smith, and Kay have a duty of loyalty, fidelity and responsibility to First Preston and its affiliate, SAFS.

63. Bornscheuer, Carter-Smith, and Kay breached that duty by obtaining First Preston's confidential information by false pretenses and using that information to First Preston's detriment, and by competing unfairly with First Preston.

64. As the proximate and direct result of Bornscheuer's, Kay's, and Carter-Smith's breaches of their duty of loyalty, fidelity and responsibility, First Preston has been injured in its business and has suffered damages.

65. First Preston is entitled to an award of damages, including punitive damages; an award of attorney's fees and costs; and other legal and equitable relief.

## COUNT V
## UNJUST ENRICHMENT & CONSTRUCTIVE TRUST
### (Against All Defendants)

66. First Preston repeats and realleges herein the allegations contained in paragraphs 1 though 65 above.

67. First Preston's trade secrets and confidential and proprietary information were derived from extensive time, labor, skill and money and provide First Preston with a competitive advantage or the opportunity to obtain a competitive advantage.

68. The defendants misappropriated First Preston's trade secrets and confidential and proprietary information, including the 1998 Proposal and employee records, and used those materials to compete with First Preston.

69. It is inequitable for the defendants to retain the benefit of their improper use of First Preston's trade secrets and confidential and proprietary information and their unfair competition.

70. First Preston is entitled to receive all funds and other property obtained by defendants as a result of their actions, as well as an award of attorney's fees and costs and other legal and equitable relief.

## COUNT VI
## ACCOUNTING
### (Against All Defendants)

71. First Preston repeats and realleges herein the allegations contained in paragraphs 1 though 70 above.

72. The defendants are in possession of misappropriated First Preston trade secrets and other confidential and proprietary information.

73. The defendants should account for all uses to which they have put First Preston's trade secrets and confidential and proprietary information.

74. The defendants should account for all benefits and profits they have obtained as a result of their misappropriation of First Preston's trade secrets and confidential and proprietary information.

## COUNT VII
## CONSPIRACY
### (Against All Defendants)

75. First Preston repeats and realleges herein the allegations contained in paragraphs 1 though 74 above.

76. All of the defendants worked in concert with each other to misappropriate trade secrets and confidential and proprietary information from First Preston.

77. The defendants engaged in these tortious acts in order to unfairly compete with First Preston.

78. As the proximate and direct result of the defendants' actions, First Preston has been injured in its business and has suffered damages.

79. First Preston is entitled to an award of damages, including punitive damages; an award of attorney's fees and costs; and other legal and equitable relief.

## COUNT VIII
## DECLARATORY JUDGMENT
### (Against Defendants NHMS, HMS, Prescient, and Hardiman)

80. First Preston repeats and realleges herein the allegations contained in paragraphs 1 though 79 above.

81. First Preston engaged in proper behavior when negotiating with AFR for subcontract services in support of AFR's M&M prime contract with HUD. Although First

Preston would have been entitled to compete at any time for AFR's business, First Preston in fact did not enter into discussions with AFR regarding a subcontract until after AFR's negotiations with NHMS proved unsuccessful and HUD instructed AFR to develop an alternative subcontracting plan. In fact, First Preston never solicited AFR to enter into a subcontract with First Preston. To the contrary, AFR asked First Preston to serve as a subcontractor in lieu of NHMS.

82. In addition, First Preston's agreement to enter into a subcontract with AFR was based solely on First Preston's own legitimate competitive interests. It was not designed to purposely or maliciously injure NHMS.

83. Further, First Preston engaged in no behavior that would have induced AFR to terminate its negotiations with NHMS or breach any agreement with NHMS. Rather, AFR discontinued the negotiations with NHMS and failed to enter into a subcontract with NHMS due to fundamental differences in the terms of the proposed subcontract, as well as HUD's refusal to approve the subcontract terms that NHMS insisted on including. Again, First Preston had no involvement in negotiating a subcontract with AFR until after AFR's negotiations with NHMS proved unsuccessful, and did not urge or induce AFR to refuse to enter into a subcontract with NHMS.

84. NHMS has threatened to file suit against First Preston for First Preston's allegedly tortious interference with NHMS's business relationship with AFR. Accordingly, this dispute constitutes an actual controversy.

85. First Preston requests a declaratory judgment that First Preston has not engaged in tortious interference with the contractual relations, business relations, or potential business relations between NHMS and AFR.

## PRAYER FOR RELIEF

WHEREFORE, First Preston prays that this Court enter an Order awarding it:

a. All damages to which First Preston may be entitled, including, but not limited to punitive and/or exemplary damages;

b. A constructive trust on the defendants' funds and other property as requested herein;

c. An accounting of all benefits and profits defendants have obtained as a result of their misappropriation of First Preston's trade secrets and confidential and proprietary information, as requested herein;

d. A declaratory judgment that First Preston has not engaged in tortious interference with contractual relations, business relations or potential relations as requested herein;

e. Pre-judgment and post-judgment interest according to law;

f. Plaintiff's reasonable attorneys' fees, full costs and disbursements in this action; and

g. All other relief as the Court may deem proper and just.

Respectfully submitted,

FIRST PRESTON MANAGEMENT, INC.

By: _____/s/_____
           One of its Attorneys
J. Alex Ward (DC#463927)
JENNER & BLOCK LLC
601 Thirteenth Street, NW
Washington, DC  20005
Tel.: (202) 639-6000
Fax: (202) 639-6066